# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02397-STV

JACQUELINE HAYNES,

      Plaintiff,

v.

ALLSTATE FIRE & CASUALTY INSURANCE,

      Defendant.

_____

## ORDER
_____

Entered by Magistrate Judge Scott T. Varholak

      This matter is before the Court on the Motion to Dismiss or, Alternatively, Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) (the "Motion"), filed by Defendant Allstate Fire & Casualty Insurance ("Allstate"). [#12] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#18, 23] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **DENIED**.

## I. FACTUAL BACKGROUND[1]

Plaintiff Jacqueline Haynes entered into an automobile insurance policy (the "Policy") with Allstate, which includes coverage for claims involving underinsured motorists. [#3 at ¶¶ 11, 169] At all times relevant to the Policy, Plaintiff paid the insurance premiums required under the Policy. [*Id.* at ¶ 169] Pursuant to the Policy, Allstate is required to pay its insured "reasonable" medical expenses for covered expenses. [*Id.* at ¶ 38]

On November 3, 2018, Plaintiff was involved in a motor vehicle accident when another driver ran a stop sign and hit her. [*Id.* at ¶ 14] The other driver, who was under the influence of drugs and/or alcohol at the time he ran the stop sign, was negligent and caused the collision. [*Id.* at ¶¶ 15, 16] Plaintiff was injured as a result of the collision. [*Id.* at ¶ 19] The negligent driver who caused the collision was insured for up to $25,000 per person. [*Id.* at ¶ 21] Allstate gave Plaintiff permission to settle with the negligent driver's insurer for the policy limit of $25,000. [*Id.* at ¶¶ 21, 22, 24]

Plaintiff contends that her injuries, damages, and losses resulting from the motor vehicle accident exceeded the $25,000 limit of the negligent driver's policy. [*Id.* at ¶ 23] Plaintiff submitted a claim to Allstate for underinsured motorist ("UIM") benefits. [*Id.* at ¶ 27] In February 2019, Plaintiff requested that Allstate pay her underinsured motorist benefits, but Allstate did not pay benefits in response to that request. [*Id.* at ¶¶ 28, 29]

---

[1] The facts are drawn from the allegations in Plaintiffs' Complaint for Damages and Jury Demand (the "Complaint") [#3], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

On June 11, 2019, Plaintiff sent Allstate a second request to pay benefits under her Policy (the "June 11 Letter"). [*Id.* at ¶ 36; *see also* #12-1][2] On July 10, 2019, Brittney Montoya, the Allstate adjuster handling Plaintiff's claim, responded to Plaintiff's claim (the "July 10 Letter"). [#3 at ¶¶ 3, 4, 77; *see also* #12-3][3] Ms. Montoya informed Plaintiff that Allstate accepted as reasonable $15,556 of the $18,312.25 in total medical expenses that Plaintiff had incurred up to that date. [#3 at ¶ 77; #12-3] Ms. Montoya further informed Plaintiff that Allstate evaluated Plaintiff's general damages at $13,500. [#3 at ¶ 79; #12-3] Ms. Montoya thus offered Plaintiff $4,056 to settle her underinsured motorist claim. [#3 at ¶ 62; *see also* #12-3] At the time of that offer, Allstate did not advise Plaintiff of any failure to meet the conditions precedent under the Policy or raise any other coverage defense. [#3 at ¶¶ 67, 68; *see also* #12-3] Although Allstate did not dispute that at least $4,056 in underinsured motorist benefits were owed to Plaintiff, no underinsured motorist benefits were actually paid to Plaintiff at that time. [#3 at ¶¶ 64, 65]

---

[2] Both parties agree that the Court should consider the June 11 Letter in analyzing Allstate's Motion. [#12 at 5; #17 at 9] The Court may consider the copy of the June 11 Letter submitted by Allstate as an exhibit to the Motion [#12-1] without converting the Motion into a motion for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").

[3] Allstate requests that the Court consider the July 10 Letter, in which Allstate provides an evaluation of Plaintiff's UIM claim, in analyzing the Motion [#12 at 9], and Plaintiff does not object [#17]. The Court finds that the July 10 Letter [#12-3], like the June 11 Letter discussed above, was incorporated by reference in Plaintiff's Complaint and thus may be considered by the Court without converting the Motion into a motion for summary judgment. [*See supra* note 2]

Plaintiff contends that, in evaluating her medical expenses, Allstate utilized a software program called Mitchell Decision Point ("MDP"). [*Id.* at ¶¶ 41, 44, 50] According to Plaintiff, Allstate uses MDP "to artificially depress healthcare reimbursements" and used MDP to reduce her medical expenses. [*Id.* at ¶¶ 49, 51] According to the Complaint, Allstate knows that its adjusters have used MDP "inappropriately or incorrectly in the past." [*Id.* at ¶ 109] Plaintiff further contends that, in evaluating her general damages, Allstate utilized a software program called Colossus. [*Id.* at ¶¶ 52, 58] According to Plaintiff, "Allstate engages in the institutional practice of inappropriately using Colossus to lower insured's general damages." [*Id.* at ¶ 123] More specifically, Plaintiff contends that Colossus fails to take life expectancy into account and cannot evaluate damages for physical impairment or disfigurement. [*Id.* at ¶¶ 129, 130] The Complaint alleges that Allstate knows that its adjusters handling UIM claims have failed to enter full and correct information into Colossus for certain past claims and provides seven examples specifically identifying both the Allstate adjuster and the claimant involved. [*Id.* at ¶¶ 114-121]

On July 10, 2019, in response to Allstate's offer, Plaintiff informed Ms. Montoya that she was aware that Allstate had entered information into Colossus incorrectly for other Allstate insureds. [*Id.* at ¶ 89] Although Ms. Montoya admitted that she had used MDP and Colossus to evaluate Plaintiff's claim, she refused to provide Plaintiff with copies of the MDP and Colossus reports used to adjust her claim. [*Id.* at ¶¶ 78, 80, 82, 83] Following that exchange, Ms. Montoya discussed Allstate's position regarding the production of MDP and Colossus reports with Allstate management. [*Id.* at ¶ 93] On July 16, 2019, Ms. Montoya advised Plaintiff that it was Allstate's position that the MDP and

Colossus reports are proprietary work product and thus would not be provided to the insured. [*Id.* at ¶ 94] According to Plaintiff, Allstate has produced MDP and Colossus reports in UIM litigation in Colorado without the protections of a protective order. [*Id.* at ¶¶ 96, 126] Plaintiff contends that Ms. Montoya's refusal to provide a reasonable basis for her July 10, 2019 offer—including production of the MDP and Colossus reports—caused unreasonable delay in the payment of the benefits owed to her, constituted a violation of the Unfair Claims Settlement Practices Act, breached Allstate's duty of good faith, and compelled her to file this lawsuit. [*Id.* at ¶¶ 137-140]

On July 29, 2019, Plaintiff filed the instant lawsuit in the Adams County, Colorado District Court asserting claims against Allstate for breach of contract, statutory unreasonable delay or denial of benefits, and common law bad faith breach of contract, and a claim against Ms. Montoya for statutory unreasonable delay or denial of benefits. [#3] As of the filing of the lawsuit, Allstate had not paid any benefits under the Policy to Plaintiff related to the November 3, 2018 motor vehicle accident. [*Id.* at 142] On August 22, 2019, Allstate removed Plaintiff's lawsuit to this Court. [#1]

On August 29, 2019, Allstate filed the instant Motion, seeking to dismiss Plaintiff's claims for unreasonable delay or denial of benefits and common law bad faith breach of contract for failure to state a claim and requesting that the Court strike the Complaint in its entirety. [#12] On September 19, 2019, Plaintiff filed her response to the Motion. [#17] On October 4, 2019, Allstate filed its reply in support of the Motion. [#20] On October 8, 2020, Plaintiff filed a notice of voluntary dismissal of her claims against Ms. Montoya. [#24]

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath or conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**B.    Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)**

Pursuant to Federal Rule of Civil Procedure 12(f), the Court—sua sponte or on a motion made by a party—"may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   The Court "possesses considerable discretion in disposing of a Rule 12(f) motion to strike" and "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party."   5C Charles A. Wright et al., Fed. Prac. & Proc. § 1382 (3d ed. 2019).

"[A]s a general matter, motions to strike under Rule 12(f) are disfavored." *Broach v. Yegappan*, No. 17-CV-02791-MSK-NYW, 2019 WL 6724246, at *2 (D. Colo. Dec. 11, 2019) (quotation omitted).   "[B]ecause federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of the[ ] grounds [articulated in the text of the Rule] are not favored, often being considered purely cosmetic or 'time wasters,' there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy."   5C Charles A. Wright et al., Fed. Prac. & Proc. § 1382 (3d ed. 2019) (footnotes omitted).   Motions to strike thus "are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Kimpton Hotel & Rest. Grp., LLC v. Monaco Inn, Inc.*, No. CIV.A. 07-CV-01514-W, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008).   "In deciding whether to [grant] a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in

support of the allegation would be admissible." *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976)).

## III.   ANALYSIS

### A.   Motion to Dismiss

Allstate first moves to dismiss Plaintiff's unreasonable delay or denial and bad faith breach of contract claims.  [#12 at 3-10]  Allstate contends that the well-pleaded facts— *i.e.*, those that are plausible, non-conclusory, and non-speculative—alleged in the Complaint are insufficient to support either claim.  [*Id.*]  The Court addresses each claim in turn.

#### 1.   Unreasonable Delay or Denial of Benefits

Pursuant to Colorado Revised Statute § 10-3-1115, an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."   "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2).  "To prove a claim of unreasonable delay or denial, an insured [thus] must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) that delay or denial was without a reasonable basis." *Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-CV-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020) (citing *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018)).   The reasonableness of the insurer's conduct is "evaluated objectively, based on industry standards." *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015).  "[I]f a reasonable person would find that the insurer's

justification for denying or delaying payment of a claim was 'fairly debatable' (*i.e.*, if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). However, "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis." *Id.* at 1218.

Allstate argues that, based upon the representation in the June 11 Letter that Plaintiff's counsel was submitting "all of the medical bills and records . . . for [Allstate] to evaluate," "one can logically deduce that Plaintiff had not previously provided all records and bills and, thus, had not submitted a complete claim." [#12 at 5] Based upon this "logical deduction," Allstate argues that only 48 days elapsed between when Plaintiff requested benefits on June 11, 2019 and when Plaintiff filed this lawsuit on July 29, 2019. [*Id.* at 6] According to Allstate, "[n]o reasonable juror could consider 48 days between submitting a complete claim and the filing of the lawsuit to be a delay, much less an *unreasonable* delay." [*Id.* at 8 (emphasis in original)]

The Court does not find Allstate's argument persuasive. As an initial matter, Allstate's representation of the June 11 Letter is misleading. The entirety of the sentence quoted by Allstate states: "At this time we are *re-sending* this request with all of the medical bills and records that we have accrued for you to evaluate." [#12-1 (emphasis added)] It thus is unclear from the June 11 Letter what information, if any, was being

provided for the first time and what information was being resent. In the Complaint, Plaintiff alleges that she first requested UIM benefits in February 2019.[4] [#3 at ¶ 28]

Moreover, even if Plaintiff had not submitted a "complete claim" until June 11, 2019, Allstate has not cited any authority to support its apparent contention that it had no obligation to pay Plaintiff's claim until it was "complete." [#12 at 6] To the contrary the Colorado Supreme Court has held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 502 (Colo. 2018). Similarly, Allstate fails to cite any authority to support its implication that 48 days is an insufficient period of time to constitute "unreasonable delay" as a matter of law, and the Court is aware of none.[5] Moreover, the Court does not

---

[4] Allstate argues that this allegation is insufficient because it "does [not] state what information was provided to Allstate [or] what her medical bills totaled." [#12 at 4] Allstate, however, fails to provide any support for the proposition that a plaintiff must specifically allege in the complaint all the information that was provided to the insurer, along with a complete accounting of her damages. Such a requirement would be inconsistent with the purpose of notice pleading. *See, e.g.*, *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (noting that "a complaint need not provide detailed factual allegations," but rather "must give just enough factual detail to provide fair notice of what the . . . claim is and the grounds upon which it rests" (quotation omitted)); *Brown v. Panhandle E. Pipeline Co. L.P.*, No. 16-2428-JAR-TJJ, 2017 WL 3821743, at *1 (D. Kan. Sept. 1, 2017) (collecting cases standing for proposition that "[i]temization of damages is not required to meet the pleading requirements of Rule 8(a)"). Allstate also contends that the allegation fails to allege "that benefits actually were owed in February 2019" [#12 at 4], but the Complaint expressly alleges that Plaintiff sent Allstate a request in February 2019 "requesting Allstate pay benefits owed" [#3 at ¶ 28].

[5] The Court is aware of an insurance regulation that imposes a monetary fine if an insurer "fails to make a decision and/or pay benefits due under the policy within sixty (60) days after a valid and complete claim has been received, and there is not a reasonable dispute between the parties." Colo. Code Regs. § 702–5:5–1–14(4)(A)(1)(b). Courts, however, have held that although the regulation's 60-day timeline may provide evidence of reasonableness, it is not conclusive and "the regulation's reference to a 'valid and complete claim' does not preclude an insured from asserting a bad faith claim based on

understand Plaintiff's unreasonable delay or denial claim to be premised upon Allstate's failure to timely respond to the June 11 Letter, but rather to allege that Allstate's July 10, 2019 response was not reasonable and thus delayed and denied Plaintiff the benefits to which she was entitled under the Policy.[6]

Allstate next argues that "[t]here are no non-conclusory allegations that Allstate lacked a reasonable basis for its actions on *Plaintiff's* claim" and "Plaintiff does not even articulate what about the offer was unreasonable or insufficient."  [#12 at 6, 7 (emphasis in original)]  Contrary to this contention, Plaintiff alleges that Allstate:  (1) used MDP—a program that allegedly is not designed to determine whether a medical charge is reasonable, fails to take certain pertinent factors into account, and has been used inappropriately or incorrectly by Allstate to artificially depress healthcare reimbursements—"to reduce" Plaintiff's medical bills from $18,312.25 to $15,556 [#3 at ¶¶ 45, 49, 51, 77, 102, 103]; (2) used Colossus—a program that allegedly fails to consider certain pertinent factors, has previously returned unreasonable results as a result of incomplete or inaccurate data input, and has been used by Allstate to inappropriately lower the general damages of its insureds—to evaluate Plaintiff's general damages [*id.* at ¶¶ 80, 114-22, 129, 130]; and (3) has not paid Plaintiff the at least $4,056 in underinsured motorist benefits that Allstate acknowledged were undisputed and owed on

_____

the unreasonable delay or denial of only a portion of his claim for benefits."  *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1181 (D. Colo. 2018)

[6] Allstate argues that "Plaintiff wishes to disregard the fact she . . . did not provide Allstate a signed authorization."  [#12 at 6]  Allstate, however, fails to provide any support for this alleged fact in either the Complaint or the documents incorporated by reference. Regardless, the July 10 Letter does not request additional information (or a signed authorization) regarding Plaintiff's UIM claim or otherwise indicate that Allstate is still in the process of evaluating that claim.  [#12-3]  Instead, Allstate states in the letter that it "ha[s] evaluated [the] claim to be $4056.00."  [*Id.*]

July 10, 2019 [*Id.* at ¶¶ 64, 142]. The Court finds these factual allegations more than sufficient to give Allstate "fair notice of what the . . . [unreasonable delay or denial] claim is and the grounds upon which it rests." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018).

Although Allstate contends that its July 10, 2019 offer was "facially reasonable" [#12 at 7], it offers no authority for the Court to find, as a matter of law, that its offer was reasonable.[7] Allstate also faults Plaintiff for failing to "show [that Allstate's use of MDP and Colossus] had any effect on her claim." [#20 at 5; *see also id.* at 7 (complaining that Plaintiff "does not allege or even speculate that any information was input wrong")] The Complaint, however, alleges that Allstate refused to provide Plaintiff with copies of the MDP and Colossus reports used to evaluate her claim. [#3 at ¶¶ 85, 94] Without the benefit of those reports, Plaintiff establishes the plausibility of her claim by alleging (1) MDP was used to reduce her medical bills, even though the program is not intended to be used to determine the reasonableness of medical bills and does not take certain pertinent factors into account; and (2) Allstate used Colossus to evaluate her general damages, even though Allstate knows that Colossus has resulted in inappropriately reduced general damages in the past and does not take certain pertinent factors into account.[8] [*Id.* at ¶¶ 45, 49, 51, 77, 80, 102, 103, 122, 129,130]

---

[7] Although Allstate cites to *Lawhon v. United States*, the Court in that case decided the appropriate amount of non-economic damages for an injured motorcycle rider based upon the evidence presented after a three-day bench trial. No. 18-CV-00818-NRN, 2019 WL 4126595, at *7 (D. Colo. Aug. 30, 2019). The Court did not establish that $10,000 is a per se reasonable amount of non-economic damages for a motor vehicle accident.

[8] In its reply, Allstate further argues that "[s]ince the [P]olicy provides that the amount of a claim will be determined by agreement . . ., without some response to the monetary offer, it cannot be said that the adjuster's decision to not immediately forward a check for the amount of the offer was without a reasonable basis, especially when the adjuster has

The Court finds the factual allegations detailed above sufficient to state a plausible claim that Allstate unreasonably delayed or denied benefits due Plaintiff under the Policy. Accordingly, the Motion is DENIED to the extent it seeks to dismiss Plaintiff's claim for the unreasonable delay or denial of benefits.

### 2.    Bad Faith Breach of Contract

Allstate also seeks dismissal of Plaintiff's claim for bad faith breach of contract for failure to state a claim. "In every insurance contract, there is an implied covenant of good faith and fair dealing . . . [that] continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith." *Sanderson*, 251 P.3d at 1217. The insurer's duty of good faith and fair dealing includes "a duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of plaintiffs' claim." *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010). "Due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured, an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action [for bad faith breach of contract] arising in tort." *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89

---

not been informed if Plaintiff accepted the offer, rejected the offer, or had a counter offer." [#20 at 8]  The Court finds the allegations in the Complaint sufficient to raise a reasonable inference that Plaintiff rejected the offer and certainly the filing of this lawsuit would have made that clear, yet, as of the filing of the Reply, Allstate apparently had not yet tendered any payment.  Allstate further argues that "simply making an offer is not an admission that a claim is worth a certain amount, so Plaintiff's conclusion that there was no dispute Plaintiff was entitled to benefits . . . must be disregarded." [#20 at 8]  The Court finds it improper to resolve this disputed issue of fact at the pleading stage.

P.3d 409, 414 (Colo. 2004). "For an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer, the insured must establish that the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness." *Dale v. Guar. Nat. Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997) (footnote omitted). "[T]he tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative." *Id.* The reasonableness of the insurer's conduct is "evaluated objectively, based on industry standards." *Williams*, 621 F. App'x at 919.

Allstate argues that Plaintiff cannot assert a bad faith claim against it because the July 10 Letter allegedly "explains what information was considered, what amounts were being applied to economic and non-economic damages, and what setoffs were being applied" and thus "is reasonable as a matter of law." [#12 at 9] Allstate, however, fails to cite any authority for the Court to find—at the pleadings stage—that a defendant's offer in response to a claim is "reasonable as a matter of law." The only authority cited by Allstate for this proposition is *Sanderson*, where the court found—at the summary judgment stage—that the plaintiff's disagreement with the explanation provided for its settlement offer made during an arbitration—which included "referencing the PIP offset issue, Sanderson's pre-existing degenerative neck condition, and the lack of damages for any loss of past or present income"— "d[id] not support a bad faith claim." *Sanderson*, 251 P.3d at 1221. The *Sanderson* court's ruling thus was specific to the facts before it and insufficient to justify the Court finding that the explanation Allstate provided here— which does not include any information about why Plaintiff's medical bills were reduced or how Allstate calculated Plaintiff's non-economic damages—is "reasonable as a matter of law."

Allstate also argues that Plaintiff's "general accusations of alleged wrongdoing on *other* claims totally unrelated to Plaintiff's claim" do not support a claim for bad faith.  [#12 at 9 (emphasis in original)]  The Court disagrees.  Plaintiff's allegations with regard to Allstate's alleged misuse of MDP and Colossus in the evaluation of other insureds' claims is relevant to Plaintiff's claims, because (1) Plaintiff alleges that Ms. Montoya expressly admitted that those programs were used to evaluate Plaintiff's claim, (2) Plaintiff alleges systematic issues with MDP and Colossus that result in unreasonable evaluations of insureds' claims, and (3) evidence of Allstate's awareness of these issues potentially is relevant to the reasonableness of Allstate continuing to use the programs to evaluate claims.  The allegations here thus are very different from those in *Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co.*, cited by Allstate, where the Court found that there were "no allegations tying [certain allegedly improper] practices to any alleged delay."  No. 17-cv-01542-RM-KMT, Dkt. No. 48 at 6.  Moreover, *Villa Maison* is inapposite, because the insurer there had not yet "produced an estimate [or] made a coverage decision" [*id.* at 3], whereas here Plaintiff brings her claims against Allstate based upon its estimate and evaluation of Plaintiff's claim.

The Court finds the factual allegations discussed above in the context of Plaintiff's claim for unreasonable delay or denial sufficient to state a plausible claim for bad faith breach of contract.[9]  Accordingly, the Motion is DENIED to the extent it seeks to dismiss Plaintiff's claim for bad faith breach of contract.

---

[9] Because the Court finds those allegations sufficient, the Court finds it unnecessary to resolve the parties' dispute regarding whether "refusing to disclose reports related to a claim—is independently a basis for a bad faith claim."  [#17 at 4; #20 at 9-11]

**B.     Motion to Strike**

Allstate argues that the Court should strike Plaintiff's Complaint in its entirety as a "shotgun pleading," or, in the alternative, that the Court should strike "the impertinent, immaterial, and redundant allegations." [#12 at 10-20] The Court addresses each argument in turn below.

**1.     Motion to Strike as a Shotgun Pleading**

Allstate argues that "the sheer number of inconsistent factual allegations, allegations totally unrelated to Plaintiff's claim, and allegations relating to entirely different lawsuits can leave little doubt that Plaintiff has engaged in improper 'shotgun pleading.'"[10] [#12 at 12-13] "The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). "Shotgun pleading is a type of pleading that 'contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.'" *Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am. Inc.*, No. 14-CV-02624-WYD-MEH, 2018 WL 6790307, at *1 (D. Colo. Nov. 28, 2018) (quoting *Jacobs v. Credit Suisse First Boston*, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011)). "[T]he shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Jacobs*, 2011 WL 4537007, at *6.

---

[10] Although Allstate appears to argue that "[a] 17-page complaint containing 198 separately numbered paragraphs" is a per se violation of Rule 8(a)'s "short and plain statement" requirement [#12 at 12], Allstate fails to provide any authority for that proposition.

Allstate's primary argument in support of a finding that Plaintiff's Complaint should be stricken as a "shotgun pleading" argues that the Complaint "impermissibly incorporates 167 paragraphs into her first claim for relief, 178 paragraphs into her second claim for relief, 184 paragraphs into her third claim for relief, and 192 paragraphs into her fourth claim for relief." [#12 at 14] As Allstate points out, Courts in this District have disparaged pleadings in which the plaintiff "simply recite[s] an extended narrative at the beginning of the pleading, and proceed[s] to state numerous claims by simply reciting the formulaic elements of the claim and referring holistically to the preceding narrative as support." *Jacobs*, 2011 WL 4537007, at *6. Although this Court agrees that, technically, it is inappropriate for a plaintiff to incorporate by reference *all* prior allegations into each of her claims, in this Court's experience, it is a practice that is almost universally employed by the attorneys who practice before this Court.[11] This Court does not find such a technical violation to warrant striking a Complaint where, despite the overbroad incorporation of preceding allegations, the defendant is provided fair notice of the factual and legal basis for each claim.

Here, although each of Plaintiff's four claims do incorporate by reference all prior allegations, they do not "simply recite[e] the formulaic elements of the claim." Instead, the Court finds that each claim sets forth the general conduct at issue sufficiently to allow Allstate to identify which of the more specific allegations incorporated by reference apply

---

[11] Indeed, although Allstate fervently decries the practice in its Motion, the Court located four cases Allstate has instituted in this District in which it raises multiple claims for relief and, in all four cases, Allstate incorporates by reference all prior allegations into each of its claims. *See Allstate v. Electrolux Home Prods., Inc.*, No. 16-cv-02080-PAB-STV; *Allstate v. Erickson*, No. 14-cv-01401-PAB-NYW; *Allstate v. Moffitt*, No. 16-cv-01491-RM-MEH; *Allstate v. Indemnity Ins. Co. of North Am.*, No. 07-cv-01865-WYD-MJW.

to that claim. Each claim thus provides Allstate "fair notice of what the . . . claim is and the grounds upon which it rests." *Warnick*, 895 F.3d at 751. Moreover, the Court notes that Plaintiff's three claims against Allstate overlap and largely involve the same conduct such that the incorporation of prior allegations into a claim (though perhaps not *all* prior allegations as Plaintiff has done here) is more efficient than restating all of the relevant factual allegations within each of the separate three claims.[12]

In sum, the Court concludes that "[t]his is not a case where incorporating prior allegations makes it impossible to understand [Plaintiff's] claims." *Churchill Med. Sys., Inc. v. Rubacha*, No. 19-CV-0226-WJM-STV, 2019 WL 5894132, at *4 (D. Colo. Nov. 12, 2019). Accordingly, the Court DENIES the Motion to the extent it seeks to strike the Complaint in its entirety as a "shotgun pleading."

### 2. Redundant, Immaterial, and/or Impertinent Allegations

Allstate further argues that certain of the allegations in Plaintiff's Complaint should be stricken as redundant, immaterial, and/or impertinent. In particular, Allstate contends that the Complaint improperly includes "argument about Colorado case law (Doc. 3, ¶¶ 30-33), makes factual assertions about entities not involved in this lawsuit (Doc. 3, ¶¶ 39-

---

[12] Allstate contends that Plaintiff's Complaint "is a mirror image of the amended complaint" that Judge Arguello "dismissed as an improper 'shotgun pleading'" in *Allbrandt v. Bank of America*. [#20 at 13 (citing No. 14-cv-01977-CMA-KMT, 2015 WL 1186660, at *7 (D. Colo. Mar. 12, 2015)] The amended complaint at issue in *Allbrandt*, however, asserted claims for fraudulent misrepresentation and violations of the Colorado Consumer Protection Act, the Real Estate Settlement Procedures Act, and the Equal Credit Opportunity Act ("ECOA") [#20-2]—claims entirely different from those at issue here. Moreover, Judge Arguello did not dismiss the plaintiffs' claims in *Allbrandt* based upon their use of shotgun pleading, but rather explained that the use of shotgun pleading "d[id] little to clarify the[ ] inconsistencies" in the plaintiffs' ECOA claim that contributed to Judge Arguello finding that that the plaintiffs had failed to adequately plead that claim. 2015 WL 1186660, at *7.

43; 54-57), makes allegations about defenses asserted in entirely unrelated litigation (Doc. 3, 74-76), and asserts wrongdoing by other adjusters on unrelated claims (Doc. 3, ¶¶ 114-121)." [#12 at 12] As explained above, motions to strike are disfavored and thus, for Allstate to succeed, it must demonstrate that the allegations have no bearing on the controversy and their presence would prejudice Allstate. See *Kimpton Hotel & Rest. Grp., LLC*, 2008 WL 140488, at *1.

The Court finds that each of the categories of allegedly redundant, immaterial, and/or impertinent allegations have potential relevance to Plaintiff's claims. Regarding the allegations in the Complaint regarding Colorado statutes and caselaw, the Court finds that such allegations may be relevant to the reasonableness of Allstate's conduct. Indeed, in other cases, Allstate itself has taken the position that "[t]he reasonableness of an insurer's conduct in Colorado is measured objectively based on industry standards, which includes relevant Colorado statutes, insurance regulations, case law, and industry-wide practices that have been entered into evidence in this case." *See, e.g.*, *Rooney v. Allstate*, No. 17-03132-STV, Dkt. No. 66-2 at 11 (Proposed Jury Instruction); *Cribari v. Allstate*, No. 16-cv-2450-NRN, Dkt. No. 225-1 at 34 (same).

With regard to the "factual assertions about entities not involved in this lawsuit," the Court finds that Plaintiff's limited allegations regarding Mitchell International, Computer Sciences Corporation, and McKinsey and Company all relate to Allstate's use of the MDP and Colossus software that Plaintiff contends was used by Allstate to unreasonably reduce the value of her claim. [*See, e.g.*, #3 at ¶¶ 39-40, 52, 55-57] These allegations thus may ultimately be relevant to a determination of whether Allstate's use of those programs to evaluate Plaintiff's claim was reasonable.

With regard to the allegations in the Complaint regarding Allstate's assertion of a failure to cooperate defense in other litigation, the Court understands Plaintiff to allege that Allstate's "institutional practice of alleging failure to cooperate when they are sued by their insured" is an unreasonable practice and that any failure to cooperate defense asserted in this lawsuit is without merit.[13]  Although a plaintiff is not required to plead around the potential affirmative defenses that a defendant may assert, Allstate has not provided any authority for a finding that a plaintiff is precluded from doing so.  Although Allstate has not yet filed its answer to the Complaint and thus it is not yet clear whether Allstate will in fact assert a failure to cooperate affirmative defense, in its Motion Allstate twice contends that Plaintiff "never provided Allstate with an authorization" which would allow Allstate to request claim supports independently.  [#12 at 2, 6]  The Court thus does not find Plaintiff's allegations regarding Allstate's assertion of a failure to cooperate defense in other litigation to have no bearing on the instant controversy.

Regarding Plaintiff's allegations regarding alleged wrongdoing by Allstate adjusters on unrelated claims, the Court finds that these allegations may ultimately prove relevant to Plaintiff's bad faith breach of contract claim, which requires Plaintiff to prove that Allstate acted with knowledge or reckless disregard of the unreasonableness of its conduct.  See, e.g., *Berwick v. Hartford Fire Ins. Co.*, No. 11-CV-01384-MEH-KMT, 2012 WL 573939, at *4 (D. Colo. Feb. 21, 2012) (recognizing that "information regarding other bad faith lawsuits may have some relevance to the bad faith claim" and allowing the plaintiffs to seek information from a Rule 30(b)(6) deponent concerning prior lawsuits

---

[13] To the extent Allstate challenges the accuracy of and evidentiary basis for Plaintiff's allegations, the proper mechanism for challenging those allegations is through a motion brought pursuant to Federal Rule of Civil Procedure 11.

against the defendant alleging bad faith for similar conduct) (emphasis omitted); *Fiechtner v. Am. Family Mut. Ins. Co.*, No. 09-CV-02681-WJM-MEH, 2011 WL 4345684, at *1 (D. Colo. Sept. 15, 2011) (acknowledging that the plaintiff must prove that defendant knew or should have known that its actions were unreasonable and thus evidence of prior litigation may be relevant to the extent it shows "[d]efendant learned that its practices were unreasonable").

Nor has Allstate established any prejudice that it would suffer if these allegations are not stricken from the Complaint. Although Allstate argues that "[t]oo many of the allegations would require a narrative response, necessarily multiplying the length and complexity of a responsive pleading" [#12 at 19], Allstate fails to identify a single example and the Court cannot perceive why the allegations would require a "narrative" response as distinguished from merely admitting or denying the allegations as required under Federal Rule of Civil Procedure 8(b)(1)(B). Although the Complaint consists of 198 paragraphs of allegations, almost all the allegations consist of a single sentence setting forth a distinct and concise allegation of fact. Similarly, Allstate contends that it will "be forced to present its defenses to the Complaint as a whole . . . instead of as to individual claims" [#12 at 19], but offers no explanation for why it will be unable to distinguish between claims in asserting its defenses. As explained above, each of Plaintiff's claims sets forth the general conduct at issue sufficiently to allow Allstate to identify which of the more specific allegations incorporated by reference apply to that claim. Finally, Allstate contends that Plaintiff's allegations will lead to "inevitable discovery disputes and time-consuming briefing." [#12 at 15] Given the potential relevance of the allegations, as explained above, the Court finds that any concern about the scope of discovery is better

resolved through objections to specific discovery requests, which the Court will resolve without the need for "time-consuming briefing" through its informal discovery dispute procedure.

Accordingly, the Court finds that Allstate has not sustained its burden of demonstrating either that the allegations have no bearing on the controversy or that their presence would prejudice Allstate.[14]  Accordingly, the Motion is DENIED to the extent it seeks to strike allegations from Plaintiff's complaint as redundant, immaterial, and/or impertinent.

---

[14] The Court thus finds the instant Complaint inapposite from the complaint struck by Judge Jackson in the supplemental authority, *Torres v. Allstate*, No. 19-cv-02592-RBJ, submitted by Defendant.  [#30]  In *Torres*, Judge Jackson granted a motion to strike a complaint filed against Allstate on behalf of an insured represented by the same attorney who represents Plaintiff in the instant case, upon finding that (1) the plaintiff may have "jumped the gun and filed a contract and bad faith claim before the defendant had a reasonable opportunity to evaluate the claim;" and (2) the complaint "appear[ed] to be created largely from a cookie-cutter template which sets forth . . . disagreements with the manner in which . . . Allstate evaluates claims rather than anything specific to how Allstate evaluated this specific underinsured motorist claim." *Torres*, Dkt. No. 19.  The Court does not find either rationale applicable to the Complaint here.  In *Torres*, the plaintiff filed the lawsuit before Allstate had completed an evaluation of the medical records provided by the plaintiff [Torres, Dkt. No. 3 at ¶ 49; Dkt. No, 9 at 1-2], whereas here Plaintiff alleges that Allstate had completed its evaluation of Plaintiff's claim based upon the information provided [#3 at 77, 79].  Presumably because Allstate had not yet completed its evaluation of the plaintiff's claim in *Torres*, Judge Jackson found that the plaintiff had failed to allege misconduct by Allstate in the handling of his specific claim.  Here, however, Plaintiff has alleged that Allstate acted unreasonably in the evaluation of her claim and included allegations that tie that alleged unreasonable conduct both to Allstate's claims handling practices and procedures generally and to Allstate's alleged misconduct in its handling of other claims.

## IV.    CONCLUSION

For the foregoing reasons, Allstate's Motion [#12] is **DENIED.**

DATED: February 18, 2020          BY THE COURT:

s/Scott T. Varholak
United Stated Magistrate Judge